THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALERIE ROGAN,

    Plaintiff,

v.

STATE OF WASHINGTON, et al.,

    Defendants.

NO. 08-0794RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment (Dkt. # 13). The court has considered the parties' briefing and supporting evidence, and has heard from the parties at oral argument. For the reasons explained below, the court GRANTS the motion (Dkt. # 13) and REMANDS the remaining state law claims to King County Superior Court.

## II. BACKGROUND

Since 1983, Plaintiff Valerie Rogan has been licensed by Washington's Department of Social and Health Services ("DSHS") to operate a childcare facility known as Hart's Day Care ("Hart's") in her home.

ORDER - 1

On December 3, 2004, DSHS received an allegation that Hart's used electric "scat mats," which are intended to control the behavior of indoor pets, in a crib to control the behavior of children. That same day, DSHS's Division of Child Care and Early Learning ("DCCEL") suspended Rogan's license to operate a childcare facility. Defendant Patricia Eslava-Vessey initiated a DCCEL investigation, and Defendant Harriett Martin was assigned to investigate. DSHS's Department of Licensing Resources ("DLR") and Child Protective Services ("CPS") also investigated the allegation, with Defendant Sandra Duron as investigator.

Rogan appealed the DCCEL license suspension. An administrative law judge stayed the suspension of Rogan's childcare license and Hart's reopened on February 22, 2005. DSHS then revoked Rogan's license in April 2005, and denied her request for license renewal in June 2005. In June 2006, an administrative law judge reversed DSHS's revocation of Rogan's license and denial of her renewal request. In August 2006, the DSHS Board of Appeals reversed the administrative law judge's June order. In August 2007, King County Superior Court vacated the DSHS Board of Appeals order and reinstated the administrative law judge's order reversing the revocation.

In April 2008, Rogan filed this lawsuit against DSHS,[1] Eslava-Vessey, Martin, Duron and Mary Roach (a DCCEL licensor),[2] alleging claims under 42 U.S.C. § 1983 for violations of her constitutional rights, and state law claims for intentional infliction

---

[1] The parties agree that DSHS is not subject to liability under Section 1983. Although Plaintiff claims she never intended to bring a Section 1983 claim against DSHS, *see* Pltf.'s Resp. (Dkt. # 18) at 23, the Complaint is less than clear as to precisely which Defendant(s) are being sued under Section 1983. *See* Complaint VII.1 (asking the court to "adjudge *Defendant* liable to Plaintiff under 42 U.S.C. § 1983") (emphasis added).

[2] Plaintiff's counsel conceded at oral argument that Duron and Roach should be dismissed as Defendants, so the remainder of this order addresses only the Section 1983 claims against the remaining individual Defendants, Martin and Eslava-Vessey.

ORDER - 2

of emotional distress, negligent infliction of emotional distress, and negligent investigation. The Defendants removed the case to this court, and now seek dismissal of Rogan's federal claims.

## III. ANALYSIS

### A. Standard of Review on Summary Judgment.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets that initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### B. Eslava-Vessey is Entitled to Absolute Immunity for Her Initiation of the License Revocation Proceeding.

The Defendants contend that Martin and Eslava-Vessey should be granted either absolute or qualified immunity from Rogan's 42 U.S.C. § 1983 claims.[3] Section 1983 creates a remedy for violations of constitutional and other federal rights by defendants who act under color of state law. *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005).

Absolute immunity from suit covers those who perform functions considered immune under common law, and only to the performance of those functions. *See Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003). Social workers are entitled to

---

[3] Rogan contends that the Defendants waived the right to raise immunity questions by not raising them earlier. She has provided no authority to support this argument. It is true that, in order to preserve the effect of immunity from suit, immunity questions should be resolved as early as possible. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). But the court is not aware of any authority requiring a defendant to raise an immunity issue at any particular stage in a proceeding, and thus will not further consider Rogan's waiver argument.

ORDER - 3

absolute immunity from suits based on the the performance of quasi-judicial or quasi-prosecutorial duties, such as the execution of a court order, initiating judicial proceedings, or advocacy before an impartial decisionmaker. *See Miller*, 335 F.3d at 898; *Caldwell v. LeFaver*, 928 F.2d 331, 333 (9th Cir. 1991); *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758 (9th Cir. 1987). On the other hand, a social worker's duties related to discretionary decisionmaking and recommendations are not functions that would entitle him or her to absolute immunity; instead, qualified immunity would apply:

> To the extent [] that social workers also make discretionary decisions and recommendations that are not functionally similar to prosecutorial or judicial decisions, only qualified, not absolute immunity, is available. Examples of such functions may include decisions and recommendations as to the particular home where a child is to go or as to the particular foster parents who are to provide care.

*Miller*, 335 F.3d at 898. The official claiming absolute immunity for a particular function has the burden to show that the function has a common-law counterpart that is absolutely immune. *Id.* at 897.

Martin and Eslava-Vessey contend that they are entitled to absolute immunity for their participation in the revocation of Rogan's childcare license. Eslava-Vessey initiated the revocation process and Martin performed the investigation that led to the revocation, and they claim that these functions are quasi-prosecutorial in nature.

The court agrees that absolute immunity shields Eslava-Vessey from suit based on her initiation of the license revocation proceeding, because that conduct is similar to initiating a criminal proceeding, a function for which prosecutors enjoy absolute immunity. *See Beltran v. Santa Clara County*, 514 F.3d 906, 908 (9th Cir. 2008) (finding a social worker who initiated a dependency proceeding to be absolutely immune from suit based on that conduct, for the same reasons that a prosecutor who

ORDER - 4

initiates a criminal proceeding is absolutely immune from suit based on that conduct). Thus, Rogan's Section 1983 claim against Eslava-Vessey must be dismissed to the extent that it is based on her initiation of the license revocation process.

Martin's investigatory conduct, however, is not similar to an absolutely immune prosecutorial function. As the *Beltran* court held: "[A]s prosecutors and others investigating criminal matters have no absolute immunity for their investigatory conduct, *a foriori*, social workers conducting investigations have no such immunity." 514 F.3d at 908-09. Thus, because Martin's investigatory conduct does not entitle her to absolute immunity, the court turns to consider whether Martin is entitled to qualified immunity.

**C. Rogan's Allegations Fail to Establish that Her Constitutional Rights were Violated.**

Qualified immunity from suit applies to a public official whose discretionary conduct "does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an official is entitled to qualified immunity, the court applies a multi-part test: First, the court inquires as to whether a violation of a constitutional right been established, if the facts alleged are viewed in the light most favorable to the plaintiff. If yes, then the court must determine whether the law was clearly established at the time the violation occurred, such that a reasonable official would know that his or her actions violated the law. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the plaintiff's allegations do not establish that a constitutional right was violated, then the court's inquiry ends and it must dismiss the claim based on the plaintiff's failure to state a Section 1983 claim. *Id*.

ORDER - 5

Rogan generally contends that her constitutional right to due process was violated, although she has been less than clear as to what specific conduct constitutes the violation.[4] The closest Rogan comes to a specific allegation related to due process is: "A reasonable licensor would know that a licensee is entitled to notice and an opportunity to be heard prior to a finding being made," in reference to two letters Martin wrote to memorialize investigations she performed regarding two child abuse and neglect allegations.

DSHS received two other abuse or neglect allegations regarding Rogan in 2004, before the December scat mat incident. Both of those allegations were investigated by Martin. With regard to the first incident, Martin interviewed Rogan and found some of the allegations to be valid. *See* Defs.' Supp. (Dkt. # 24), Ex. 9. Martin and Rogan ultimately completed a compliance agreement. *See id.*, Ex. 11 at 202. As to the second incident, Martin again interviewed Rogan and found that one of the allegations was inconclusive, but one was valid. *See id.*, Ex. 10; Ex. 11 at 208-11. These referrals were considered during Rogan's license revocation process related to the scat mat incident. *See id.*, Ex. 11 at 199.

The day before Rogan's administrative hearing in November 2005, she was faxed copies of letters memorializing Martin's findings with regard to these two 2004 investigations. *See id.*, Ex. 11 at 201. The letters are dated in 2004, though Rogan did not receive copies of them until the day before her administrative hearing in 2005. *See id.*, Exs. 9-10.

Though it is undisputed that Martin did not send the investigation letters at the time the investigation was concluded, Rogan has failed to establish that Martin's

---

[4] It is also unclear if Rogan's claim against Eslava-Vessey is based on conduct other than initiating the revocation proceeding. To the extent that Rogan attempts to base her claim against Eslava-Vessey on her knowledge or ratification of Martin's conduct, the analysis contained in this section applies equally to Eslava-Vessey and Martin.

ORDER - 6

failure to do so violated her right to due process. Martin testified at Rogan's administrative hearing that until 2005, DSHS did not send findings letters; the licensee was supposed to call DSHS if he or she wished to know the outcome of an investigation. *See id.*, Ex. 11 at 211. The letters themselves do not inform the licensee of appeal procedure or any other right; Martin indeed testified that the findings memorialized in the letters are not appealable or contestable in any way. *See* Ruzumna Decl. (Dkt. # 19), Ex. 2 at 38. And though Rogan repeatedly characterizes the letters as "fabricated" throughout her briefing, she does not contend that the allegations underlying the letters were fabricated; the only thing allegedly "fabricated" about the letters is their dates, in the sense that the letters were allegedly not written on the indicated dates or mailed to Rogan on those dates. But nonetheless, even if the dates on the letters are inaccurate, Rogan has failed to explain how Martin's back-dating the letters deprived her of any due process.

Furthermore, the court finds no support for Rogan's Section 1983 claim in her contention that the Defendants are "barred by res judicata and collateral estoppel from re-litigating the issue of whether Ms. Rogan's constitutional rights were violated by the proffer of fabricated evidence by [DSHS]," because King County Superior Court already made such a finding. *See* Pltf.'s Resp. (Dkt. # 18) at 28. But King County Superior Court never found that Martin's conduct or any conduct related to the referral letters violated Rogan's constitutional rights. King County Superior Court did find that Rogan's due process right was violated, but not because of Martin's conduct. The order states that the review judge's application of the wrong standard of review violated Rogan's right to due process. *See* Defs.' Mot. (Dkt. # 13), Ex. H. The court further found that to the extent that the review judge relied upon the two 2004 referrals memorialized in the letters "to treat the current action as a licensing action, [the review

judge's order] is arbitrary and capricious." *Id*. ¶ 2.4. This finding does not refer to Martin's conduct or even the letters themselves; it relates only to whether the referrals establish that the current action was a licensing action. Thus, the King County Superior Court order does not contain any support for Rogan's Section 1983 claim nor her res judicata or collateral estoppel arguments.

Thus, because Rogan has not shown that Martin's conduct related to the findings letters violated her constitutional rights, and has not identified any other specific conduct that amounts to a constitutional violation, she has failed to state a valid Section 1983 claim. Rogan's claim against Martin must be dismissed.

### IV. CONCLUSION

For the reasons explained above, the Defendants' motion (Dkt. # 13) is GRANTED, and Plaintiff's Section 1983 claims against Duron, Roach, Martin, and Eslava-Vessey are dismissed. The remaining state law claims are REMANDED to King County Superior Court.

DATED this 18th day of May, 2009.

_____
The Honorable Richard A. Jones
United States District Judge